WILSON *et al. v.* WRIGHT, comptroller-general.

1. Under the facts of this case, the tax-collector having collected taxes and failed to pay them over to the comptroller-general, the latter had the right to issue executions against him and his sureties.

2. Whenever a sheriff has money in his hands collected from a defaulting tax-collector, it is his duty to pay it over to the comptroller-general at once. There is no law for any person to give him notice to hold it up until his claim can be passed upon by the court.

3. If the tax-collector received the taxes in question while acting under his bond for 1885–6, it seems that the securities on that bond would be liable for the amount so received, but not so liable if they were received under his bond for 1887–8. If they were received after his re-election for 1887–8, and after he had given a new bond for those years, it seems that the sureties on his bond for 1885–86 ought not to be held liable therefor; and it is possible that, if this state of facts should be made to appear to the comptroller-general, he might relieve the securities on the first bond. If he should not have power or authority to do this, an appeal could be made to the legislature which would doubtless afford appropriate relief.

April 10, 1889.

Tax-collector. Taxes. Comptroller-general. Principal and surety. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1888.

W. A. Wright, comptroller-general of Georgia, by petition to the superior court of Fulton county, alleged that the sheriff of said county had in his possession $5,255.64, proceeds of the sale of property of J. M. Wilson, late tax-collector of that county, under a *fi. fa.*

issued by the comptroller against Wilson and the sureties on his bond for taxes due the State for 1886, $5,790.36; also a *fi. fa.* against Wilson and the sureties on his bond for taxes due the State for 1887, $4,384.99; also a *fi. fa.* against Wilson and the sureties on his bond for taxes due the State for 1888, $10,860.10. Also that the sheriff had in his hands the further sum of $1,250 paid him by J. A. McCool, one of the sureties, and that petitioner had demanded the $5,255.64 and the $1,250 from the sheriff, and instructed him to credit the same on *fi. fa.* in his hands in favor of the State and pay out the money as provided by law, which said sheriff refused to do. Petitioner prays for a rule *nisi* against the sheriff, calling on him to show cause why he should not so pay out the money, etc.

The sheriff answered, in substance, as follows: The comptroller-general placed in his hands a *fi. fa.* in favor of the State against Wilson, T. C., principal, and C. W. Wells, A. H. Wilson, J. A. McCord, T. D. Longino, M. C. Martin, L. A. Harville, W. A. Bonnell and S. A. Wilson, securities, for $10,860.10, with twenty per cent. per annum on the principal sum from October 23, 1888, with costs, the *fi. fa.* being dated November 15th, 1888. Respondent levied it on the property of said principal. At same time he had in his hands a *fi. fa.* issued by the clerk of the commissioners of roads and revenues for said county against Wilson, principal, and the same securities, with the exception of Longino, Martin, Harville and Bonnell, and the addition of B. Adair, J. M. Latham, G. E. McLarin and G. H. Tanner, for $5,029.45, with twenty per cent. per annum on said principal from November 7th, 1888, for alleged default in county taxes for 1886; and another *fi. fa.* of like character against the same principal, and W. L. Wilson, W. C. Parker, C. M. Cole and G. E. McLarin, sureties, for $2,744.87, with twenty per cent. per annum thereon

from November 7th, 1888, for alleged default in the county taxes for the year 1887; and another of like character for $4,827.60 for county taxes of 1888. These county *fi. fas.* were issued November 24th, 1888. They were levied on the same property, and the property was sold under all the *fi. fas.* mentioned, State and county, in January, 1889. The net proceeds of the sale were $5,255.64, which respondent reported to the comptroller-general, whereupon the latter placed in his hands two other *fi. fas.*, one for $5,790.36 principal, with twenty per cent. per annum thereon from February 20th, 1887, dated November 15th, 1888, against said principal, and McCool, Parker, Cole, Longino, W. L. and A. H. Wilson, sureties for alleged default in State taxes in 1886. On this *fi. fa.* the sheriff of Campbell county had made certain payments to the comptroller, amounting in round numbers to $3,250, in December, 1888, and January, 1889, out of the proceeds of other property of the principal sold by him. The other of said *fi. fas.* was of like character, for $4,384.96 for alleged default in State taxes in 1887, against the same principal, and Wells, McCool, Longino, Martin, Harville, Bonnell, A. H. and S. A. Wilson, which appears also to have been levied by the sheriff of Campbell county, and proceeds of sale applied to same. On January 14th, 1889, the comptroller directed respondent to apply said $5,-255.64 as follows: $4,564.37 on the executions of 1886, which would settle the principal and penalty of twenty per cent. due on said *fi. fa.* up to January 7th, after deducting Wilson's commissions; and to apply the remainder to the *fi. fa.* for 1887. Afterwards on the same day, attorneys for McCool, Parker, Longino and others of Wilson's securities (some of said securities being on more than one State bond of Wilson and some also on the county bond and bonds), to avoid a levy on McCool's property, paid to respondent, for McCool,

$1,250, with direction to apply it to the *fi. fa.*, State or county, against him as a security having the prior lien in law, and advised respondent to make no disposition of said funds until directed by the court.   On the same day, the attorney for Fulton county notified respondent that the county claimed that the money paid in by McCool, security on Wilson's bond to the county for 1886, should be applied to the county *fi. fa.* for 1886.   Respondent asked for direction.

The attorneys for W. L. and A. H. Wilson, H. M. Reed, administrator of McCool, Parker and Longino, presented the petition of said parties, in which they made the following allegations, in substance: Wilson was elected tax-collector for Fulton county for 1885 and 1886, and again for 1887 and 1888, acting as such until October 22d, 1888, when he was removed.   On his bond to the State for 1885 and 1886 as securities were McCool, Parker, Cole, Longino, W. L. and A. H. Wilson.   On his bond to the State for 1887 and 1888 the sureties were Wells, Longino, Martin, Harville, Bonnell, A. H., S. A. and J. A. Wilson.   On his bond to Fulton county for 1885 and 1886 were Adair, Wells, Latham, McLarin and A. E. Wilson as securities, but this bond, on September 31st, 1886, was so modified as to strike Adair and Latham and add McCool, Tanner and S. A. Wilson as sureties.   His bond for 1887 and 1888 had on it as securities Parker, Cole, McLarin and W. L. Wilson, and possibly O. I. Culberson was added as security on April 23, 1888.   The books of the comptroller and Wilson's accounts as tax-collector for 1886 and 1887 were duly balanced after a settlement with him in those years respectively.   Among the items to his credit, allowed him according to law by the comptroller-general, were the following: for 1886, by insolvent general, capital and poll tax, $8,678.15; for 1887, by same items, $10,888.28.   Afterwards in 1888 a committee of the

grand jury of Fulton county reported to the county commissioners that Wilson was in default, and furnished an itemized statement of money collected by him and not paid over. Among said items to make up reported default were the following : for 1886, alleged to have been collected after his insolvent list for that year had been allowed, insolvent general, capital, poll and professional taxes, less commissions, $3,997.97, the entire default for the year being reported $5,495.10 ; and for 1887, the following sum alleged to have been collected after his insolvent list for that year had been allowed, insolvent general, capital, poll and professional tax, less commissions, $3,595.89. Thereupon the comptroller-general issued the three *fi. fas.* mentioned in the sheriff's answer, and the county commissioners issued their three *fi. fas.* mentioned in the same answer, the latter three *fi. fas.* being issued upon a like report and for insolvent taxes in large part, which had been duly allowed and credited for 1886 and 1887, upon said report that Wilson had, after such allowance and credit of his insolvent list by the county officers, collected sums thereon in 1887 and 1888. Petitioners contend that under the facts, no executions against Wilson's securities could be legally issued by the comptroller-general for insolvent taxes which had been allowed to Wilson on the books of comptroller and were afterwards collected by Wilson. They pray to be made parties to the rule to set up this defence; that said insolvent items be written off with the twenty per cent. per annum thereon, and then the cash on hand be applied to pay off, first the State *fi. fa.* of 1886, and then of 1887, and if any balance, then to that of 1888. They presented no objection to the county *fi. fas.*, as in no event could they get any of these funds. Attached to the petition as exhibits were final statements of Wilson's account with the comptroller-general for 1886, showing the amount allowed for insolvent

general and poll taxes as stated in the petition of the securities; also copy of the statement made by the examining committee to the county commissioners referred to, and copies of Wilson's bonds to the State for 1886 and 1887.

Counsel for the comptroller-general objected to said sureties being made parties, but subsequently, upon the statement of the attorneys for the sureties that they were willing that the money in the sheriff's hands should be paid to the comptroller, but desired only to have a ruling on the question made in the answer and petition, the objection to their being made parties was withdrawn, and counsel for the comptroller demurred orally to their petition. Thereupon it was adjudged that the court had no right to review the action of the comptroller in issuing said *fi. fas.*, and the court refused the petition and ordered the money in the hands of the sheriff to be paid to the comptroller. To this action and judgment the sureties excepted.

N. J. & T. A. Hammond, for plaintiffs in error.

C. D. Hill, solicitor-general, Mayson & Hill and W. S. Thomson, *contra*.

Simmons, Justice.

1. Under the facts reported in this case, the trial judge did not err in the judgment complained of. We have no doubt, under the law and the facts of this case, of the authority of the comptroller-general to issue these tax executions. It is conceded that Wilson, the defaulting tax-collector, had collected these taxes, and had failed to pay them over to the comptroller-general, and the law is plain, under that state of facts, that the comptroller-general has the right to issue executions against him and his sureties.

2. Another question made was upon the legality of the appropriation of the fund in court as directed by the

comptroller-general. As to this question, we do not think courts have any jurisdiction to hear or determine the same. The law seems to place matters of this sort entirely upon the comptroller-general, and does not allow courts to supervise or control his judgment. Whenever a sheriff has money in his hands collected from a defaulting tax-collector, it is his duty to pay it over to the comptroller-general at once. There is no lawful authority for any person to give him notice to hold it up until his claim to the fund can be passed upon by a court. Code §§885, 912; *Goldsmith* v. *Kemp*, 58 *Ga.* 106.

3. It does not appear in this record whether Wilson, the collector, received these taxes under his bond for 1885 and 1886, or whether he received them under his bond for 1887 and 1888. If he received them while acting under the first bond, we see no reason why the securities on that bond would not be liable for the amount received while he was acting under that bond. If, however, he received them after his re-election, in the years 1887 and 1888, and after he had given a new bond and security for these years, it seems to us that the security on the first bond ought not to be held liable therefor; and it is possible that if this state of facts should be made to appear to the comptroller-general, he might relieve the first securities. If he should not have power or authority to do this, an appeal could be made to the legislature, which would doubtless afford appropriate relief. *Judgment affirmed.*